UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSHUA TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>SHARON HAWK *et al.*,<br><br>Defendants. | CAUSE NO. 3:19-CV-1021 DRL-MGG |

OPINION AND ORDER

Joshua Taylor, a prisoner without a lawyer, filed this action under 42 U.S.C. § 1983. Mr. Taylor was granted leave to proceed on a claim against Sergeant Bradley Holt, Officer Renee Gall, Counselor Chelsea Fox, Assistant Warden Sharon Hawk, and Warden William Hyatte for failing to protect him from an attack by other inmates on February 23, 2018, at Miami Correctional Facility (MCF). He was also granted leave to proceed on a claim that Officer Jonathan Sands denied him access to medical care after the attack. Defendants move for summary judgment on the ground that Mr. Taylor did not exhaust available administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Mr. Taylor filed a response and supporting documents objecting to the motion.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine dispute of material fact exists, the court must "consider all of the

evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in that party's favor. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that the defendant must prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage

of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

At all relevant times, MCF had a grievance process in place, which consists of three steps: (1) a formal grievance following unsuccessful attempts at informal resolution of the problem; (2) a written appeal to the Warden or his designee; and (3) a written appeal to the Indiana Department of Correction Grievance Manager. (ECF 31 ¶¶ 6-9; ECF 30–1 at 3.) Inmates may grieve a variety of matters, including medical needs and actions of staff. (ECF 31 ¶ 10.) Inmates are made aware of the policy at the time of their arrival at MCF, and the policy is also available in the prison law library. (ECF 31 ¶ 5.)

Official grievance records reflect that Mr. Taylor filed 27 formal grievances on a variety of issues between January 2018 and June 2018. (ECF 30-2 at 1-3.) Relevant to this case, Mr. Taylor filed a grievance on February 23, 2018, complaining that he had been stabbed by other inmates because no one at the prison had done anything to protect him. He further stated that after the attack, "your officer didn't get me help, I still haven't seen medical[.]"[1] (ECF 30-3 at 7-8.) This grievance was denied by MCF Grievance Specialist Shawna Morson on March 8, 2018. (ECF 30–3 at 5–6.) Her response stated as follows: "Upon investigation of this matter, you were offered [protective custody] which you declined per your Caseworker Ms. Hamrick. Also, we spoke to the medical staff and there

---

[1] Mr. Taylor also filed three grievances in early February 2018 complaining that he was being harassed and assaulted by correctional officers. (ECF 30-3 at 1-4.) The wording of his grievances is somewhat confusing, but the court does not read these grievances as relating to his attack by other inmates, which occurred after the grievances were filed.

3

were no notations about any stab wounds on your person. You were last seen for your ear on 2-28-18." (*Id.* at 6.)

On March 21, 2018, Mr. Taylor filed a new grievance against Ms. Morson based on her alleged mishandling of his February 23, 2018 grievance. (ECF 30–3 at 10.) The grievance also complained about his caseworker, Ms. Hamrick, and mentioned his ear medicine. (*Id.*) Ms. Morson returned the grievance to him, advising him that it contained multiple issues in violation of the grievance policy. (*Id.* at 9.) He was told that he could resubmit a separate form for each issue he wished to grieve. (*Id.*) Mr. Taylor resubmitted his grievance pertaining to Ms. Morson's alleged improper handling of the grievance he filed on February 23, 2018.[2] (*Id.* at 14.) That grievance was denied by MCF's executive assistant, who determined that Ms. Morson did not act improperly in resolving his earlier grievance. (ECF 30–3 at 17.) Mr. Taylor also filed a new grievance against medical staff complaining that they gave false information to Ms. Morson in the course of her investigation of his February 23, 2018, grievance. (ECF 30–3 at 19.) This grievance was also denied. (ECF 30–3 at 18.) There is no record of Mr. Taylor having filed appeals of any of these grievances. (ECF 30-2; ECF 31 ¶ 17.)

---

[2] Mr. Taylor also resubmitted his grievance about Ms. Hamrick, complaining about a March 1, 2018 incident wherein she brought some protective custody forms to his cell. (ECF 30-3 at 12.) This grievance was denied as untimely. (*Id.* at 11). Ms. Hamrick is not a defendant in this case, nor does the March 1, 2018 incident appear to relate directly to his claim that Defendants failed to take adequate steps to protect him *prior* to the February 23, 2018 attack. In any event, there is no record of Mr. Taylor completing steps two and three with respect to this grievance.

4

As outlined above, the official grievance process contains three steps: (1) a formal grievance; (2) an appeal to the warden; and (3) an appeal to the grievance manager. (ECF 30–1 at 3.) Liberally construing Mr. Taylor's filings, he completed step one of the process with his February 23, 2018 grievance, which complained of both the attack by other inmates and the failure to provide him medical care after the attack. (ECF 30-3 at 7-8.) Defendants contend that this grievance was inadequate because it did not mention Officer Sands by name—the officer who allegedly denied him access to medical care. (ECF 29 at 5.) The court disagrees. Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id*. at 650. Mr. Taylor's grievance clearly stated that an "officer" failed to get him medical care after he was attacked by other inmates, and the grievance policy did not require him to identify a responsible party by name. (*See* ECF 30-1 at 9.) Therefore, the court concludes that Mr. Taylor satisfied step one of the process.

After completing step one, the next step was for Mr. Taylor to file an appeal to the warden or his designee, and thereafter to file an appeal to the IDOC grievance manager. (ECF 30–1 at 3.) As Defendants point out, there is no evidence in the record showing that Mr. Taylor filed an appeal at either level after his February 23, 2018 grievance was denied.

Mr. Taylor attributes this to misconduct by Ms. Morson—specifically, that she failed to follow internal policies in handling his grievance, including taking too long to decide it, since he labeled the grievance as an "emergency." (ECF 34 at 2-3.) It appears

5

from the record that Ms. Morson may not have viewed the grievance as a true emergency, even though Mr. Taylor wrote "emergency" at the top of the form, and thus handled it in accordance with the procedures applicable to ordinary grievances.[3] Indeed, Mr. Taylor seems to acknowledge that his filing was not a proper "emergency" grievance, but states that he labeled it as such because he was on a "grievance restriction" after having filed so many grievances in the preceding months, and therefore could not file an ordinary grievance. (ECF 34 at 1.) In any event, a misstep by Ms. Morson in processing Mr. Taylor's grievance would not have prevented him from filing an appeal once the grievance was denied. It is clear that Mr. Taylor received a copy of her denial, as he included it with his own filings. (ECF 33 at 17.) Even if he were claiming that he never received Ms. Morson's denial, the grievance policy permitted him to proceed to the next step if he did not receive a response from her within 20 days. (ECF 30–1 at 11.)

Mr. Taylor also contends that he did file an appeal, but the document he points to is not an appeal of the denial of his grievance, but an entirely *new* grievance against Ms. Morson.[4] (*See* ECF 34 at 3; ECF 30–3 at 10.) He also argues that he could not file an appeal because he was on a grievance restriction during this period. (ECF 34 at 3.) The grievance

---

[3] An "emergency" grievance may be used where the inmate would be at "substantial risk of personal injury or irreparable harm" if he were required to comply with the time limits applicable to ordinary grievances. (ECF 30–1 at 2.) An emergency grievance must be addressed within one business day. (*Id.* at 4.)

[4] There is an appeal form contained in the record, but it appears to relate to Mr. Taylor's later-filed grievance against Ms. Morson. (ECF 30-3 at 16.) The form is also blank and unsigned. (*Id.*) The grievance policy requires an inmate pursuing an appeal to "state why the previous response was unacceptable, thereby establishing a rationale for the appeal and basis for a reinvestigation." (ECF 30–1 at 12.) The blank appeal form contained in the record does not satisfy this requirement.

policy provides that when an inmate abuses the grievance process, he may be restricted from filing additional grievances for a 30-day period. (ECF 30–1 at 8.) Other than making this general assertion, Mr. Taylor does not provide any specifics about when the restriction was imposed or when it was lifted for the court to determine that he was prevented from filing an appeal in this case. *See Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (because prisoner failed to provide specifics about how he was prevented from exhausting, summary judgment for the defendants was proper).

The record reflects that Mr. Taylor was not on a grievance restriction during the applicable period. To the contrary, grievance records reflect that Mr. Taylor was filing grievances and appeals throughout this period on other issues, including 11 formal grievances in February 2018, two grievance appeals in March 2018, and 11 grievance appeals in April 2018. (ECF 30-2 at 1-2.) He also filed the new grievance about Ms. Morson in late March 2018, which was accepted for filing, investigated, and denied on the merits. (ECF 30-3 at 13-14.) Additionally, the grievance policy provides that a grievance restriction does not prohibit emergency grievances, nor does it prohibit appeals. (ECF 30-1 at 8.) Indeed, the grievance policy expressly states in bold lettering: "The right to appeal is absolute and the offender shall not be informed otherwise or asked to waive this right." (ECF 30–1 at 11.) In sum, the record reflects that Mr. Taylor had available administrative remedies that he did not exhaust before filing this lawsuit.

For these reasons, the motion for summary judgment (ECF 28) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative

remedies in accordance with 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

SO ORDERED.

February 25, 2021                                                       *s/ Damon R. Leichty*
                                                                        Judge, United States District Court